In the Matter of JAMES R. AYERS, SR., as Sheriff of Tioga County, et al., Respondents-Appellants, v THOMAS COUGH-LIN, as Commissioner of the Department of Correctional Services, et al., Appellants, and RAMON RODRIGUEZ, as Chief Executive Officer of the State Division of Parole, Respondent.

Third Department, May 26, 1988

### APPEARANCES OF COUNSEL

*Robert Abrams*, Attorney-General (*Frederic L. Lieberman* and *Barbara B. Butler* of counsel), for appellants.

*McGovern, Kehoe & Mitchell* (*Tom Mitchell* and *Peter R. Kehoe* of counsel), for respondents-appellants.

### OPINION OF THE COURT

Mahoney, P. J.

This CPLR article 78 proceeding was originally commenced

by 43 of New York's 58 County Sheriffs, all of whom are responsible for the operation of jails and local correctional facilities within their respective counties. Six additional Sheriffs were later joined as petitioners. Respondents include representatives of the Department of Correctional Services, which is charged with the responsibility of accepting and keeping all persons sentenced to a term of imprisonment in a State correctional facility, the Commission of Correction, which oversees all correctional institutions in the State and promulgates rules and regulations establishing minimum standards for the care of persons confined therein, and the State Division of Parole, which is responsible for the supervision of persons paroled from State correctional facilities.

The genesis of the dispute is the recognized problem of overcrowding in the prison system of this State. Generally, where a defendant in a criminal action is incarcerated prior to conviction and sentencing, the individual is confined at the local correctional facility of the county in which the action is pending. After sentencing, the defendant is committed to the custody of the Department and is ultimately assigned to a State correctional facility. After sentencing, there is some delay while certain paperwork is processed before the prisoner is "State-ready". Because of cost and lack of space, the County Sheriffs want the Department to accept prisoners as soon as they become State-ready. The problem is compounded by the fact that the Commission has promulgated regulations, which apply to both county and State facilities, establishing maximum capacity. In some circumstances, County Sheriffs, faced with a delay by the Department in accepting State-ready prisoners and maximum capacity in their correctional facilities, are forced to house prisoners in other counties' facilities at a great cost to the county. Finally, the Sheriffs contend that the Division of Parole unreasonably delays the processing of alleged parole violators, who remain in county facilities until their parole is formally revoked and they, thus, become State-ready.

In response to these circumstances, the Sheriffs commenced this CPLR article 78 proceeding seeking to (1) compel the Department to accept all prisoners and parole violators within 48 hours after they become State-ready, (2) compel the Division of Parole to timely process parole violators, (3) require the State to compensate the counties where the Department does not timely accept State-ready prisoners or the Division of Parole does not timely process parole violators, and (4) enjoin

the Commission from enforcing regulations prohibiting overcrowding in county facilities so long as the Department has not removed State-ready prisoners from the county facilities. Respondents answered, opposing the relief sought, and counterclaimed seeking an order directing petitioners to construct additional jails or apply to create substitute jails. Supreme Court dismissed petitioners' claim for monetary compensation, the cause of action against the Division of Parole and the counterclaim. Supreme Court also ordered, *inter alia,* that, absent exigent circumstances, the Department must accept prisoners, including parole violators, within 10 days after notification that they are State-ready and enjoined the Commission from enforcing its minimum standards to the extent that overcrowding is caused by State-ready prisoners and adjudicated parole violators remaining in the county facilities beyond the 10-day period set forth above. The Department and the Commission (hereinafter collectively referred to as respondents) appeal, challenging the affirmative relief ordered by Supreme Court and the dismissal of their counterclaim.* Petitioners appeal from Supreme Court's dismissal of the claim against the Division of Parole.

We turn first to respondents' claim that Supreme Court erred in holding that the Department must accept prisoners within 10 days after they are State-ready. The basis for petitioners' position in this regard is CPL 430.20 (1), which provides in pertinent part: "When a sentence of imprisonment is pronounced * * * the defendant must forthwith be committed to the custody of the appropriate public servant and detained until the sentence is complied with." This statute has been held to require that the public servant to whom custody of the defendant has been committed accept the defendant without delay *(see, Crespo v Hall,* 56 NY2d 856, 858; *County of Nassau v Cuomo,* 121 AD2d 428, *mod on other grounds* 69 NY2d 737). Further, in several recent cases, courts have mandated that State officials accept certain persons committed to their custody within a specific time period *(see, Crespo v Hall, supra* [10 days]; *Matter of Dooley v Coughlin,* 134 AD2d 350 [14 days]; *Matter of County of Monroe v Cuomo,* 132 AD2d 1003, *lv denied* 70 NY2d 608 [14 days]; *County of Nassau v Cuomo, supra* [10 days]). However, each of those cases involved

---

* Respondents also appeal from Supreme Court's denial of their motion to dismiss for failure to join the remaining Sheriffs in the State as necessary parties. Because of our resolution of this matter, it is unnecessary to address this issue.

a court tailoring relief to the specific facts and circumstances of the case. In *Dooley, County of Monroe* and *County of Nassau,* the relief concerned specific county detention facilities. In *Dooley,* the proof established that State-ready inmates had remained in Suffolk County Correctional Facility for months awaiting acceptance by the Department, resulting in a dangerously overcrowded situation at that facility. Likewise, in *County of Monroe* and *County of Nassau,* proof established that the county facilities were filled to capacity. In another recent case involving Erie County, the Supreme Court set a 10-day period but only when the county facility's population exceeded 500 inmates *(Matter of Higgins v New York Dept. of Correctional Servs.,* Sup Ct, Erie County, Aug. 17, 1987, Kane, J.). The relief ordered in *Crespo* was State-wide, but was limited to commitments to the State Division for Youth and was based on proof regarding not only the capacity of New York City detention facilities but also facilities of the State Division for Youth. The instant case is very different and such difference strikes at the heart of the distinction between legislation and adjudication.

■ The Legislature has the authority to amend CPL 430.20 (1) to define "forthwith" as a specific time period, and it may do so based on whatever policy considerations it deems appropriate. The judiciary may use the equitable remedy of injunction to define "forthwith" as a specific time period, but only where, based on evidence presented in a particular dispute, such extraordinary relief is necessary to give the statute any meaning and to provide relief to the prevailing party. Such is the situation in the above-discussed cases. In the instant case, Supreme Court established a time period with State-wide applicability. Yet, the proof in the record does not demonstrate that every county correctional facility in the State holds State-ready inmates for a prolonged period of time with the result that every such facility is overcrowded. Indeed, the petition states that only 28 of the 58 local correctional facilities are operating beyond capacity. Nor is there any evidence indicating that 10 days is appropriate for every local facility. Thus, unlike the cases discussed earlier, the proof in the record does not warrant the extraordinary relief ordered by Supreme Court. Without disputing the wisdom of such relief, it is more properly a legislative remedy, not an adjudicatory one.

■ Next, respondents claim that Supreme Court erred in enjoining the Commission from enforcing its minimum stan-

dards to the extent that overcrowding is caused by the failure of the Department to accept State-ready prisoners. The regulations of the Commission provide a maximum capacity for each local correctional facility and prohibit the placement of prisoners in excess of such capacity (see, 9 NYCRR part 7040). Petitioners' argument is that it is inequitable for them to be penalized for failure to comply with the regulations where such failure is caused by the Department's refusal to timely accept State-ready inmates. This argument appears at first glance to have merit: the Department is charged with the responsibility of housing prisoners and it would be inappropriate for it to solve its overcrowding problem by the expedient of foisting the prisoners on the counties. However, the considerations behind 9 NYCRR part 7040 are broader than simply the relationship between the counties and the Department. The Commission is charged with establishing minimum standards for the care, custody, treatment and supervision of inmates in the local correctional facilities as well as State correctional facilities (Correction Law § 45 [6]). This legitimate concern of the Commission does not become irrelevant simply because the overcrowding situation is the fault of the Department rather than the counties. The Commission lawfully promulgated 9 NYCRR part 7040 and the fact that the Department may have caused the overcrowding does not provide legal justification for interfering with the Commission's authority.

■ We agree with Supreme Court that petitioners do not have standing to challenge the timeliness of parole revocation procedures. In order to establish standing, a petitioner must show, not only that delay in parole revocation proceedings will have a harmful effect on them, but also that the interest asserted by them is arguably within the zone of interest to be protected by the statute (see, Matter of Sun-Brite Car Wash v Board of Zoning & Appeals, 69 NY2d 406, 414). Here, the statute sets forth certain time periods within which parole revocation procedures must take place (see, Executive Law § 259-i [3]). It is clear that these procedures were designed to protect the due process rights of parolees (cf., Morrissey v Brewer, 408 US 471, 485, 488). Petitioners have offered nothing to demonstrate that the Legislature also intended to benefit counties by reducing the time that alleged parole violators are in their facilities.

■ Finally, the counterclaim filed by respondents is patently frivolous and was properly dismissed. It seeks to compel

petitioners to take steps to alleviate overcrowding at county correctional facilities. To the extent that respondents seek to compel petitioners to construct sufficient additional jails, there is nothing in the record to demonstrate that individual County Sheriffs have the authority to undertake such action. On the contrary, it is elementary that such action may be taken only by the governing body of the county. To the extent that the counterclaim seeks to direct petitioners to obtain permission to designate substitute jails pursuant to Correction Law § 504, it is likewise without merit. Since such action by the Sheriffs would clearly be discretionary in nature *(see,* Correction Law § 504 [1]), it could not be the subject of a proceeding in the nature of mandamus to compel. Further, the use of mandamus to review to challenge a discretionary act is only available to review a specific decision alleged to be arbitrary and capricious. There has been no such specific decision which is being challenged herein.

YESAWICH, JR., J. (concurring in part and dissenting in part). We would affirm Supreme Court's judgment.

The term "forthwith" is not discretionary *(see,* Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 430.20, at 309), it means "without delay" *(Crespo v Hall,* 56 NY2d 856, 858; *County of Monroe v State of New York,* 123 AD2d 141, 142, *lv denied* 69 NY2d 612) and not merely whenever the Department of Correctional Services deems it prudent to receive State-ready inmates. By in effect defining "forthwith" to mean promptly, only if the county jail is full, otherwise at the leisure of the Department, the majority has effectively amended CPL 430.20 (1) because the statute does not make overcrowding of a county facility a prerequisite to the transfer of prisoners.

That Supreme Court's determination that 10 days is the outer limit of time, unless exigent circumstances justify a further limited delay, that the Department can constrain counties to retain State-ready prisoners is rational is borne out by respondents' acknowledgment in this litigation that this is precisely the period required by the Department to meet its "logistic needs * * * for the receipt of new inmates", and from the fact that the 10-day limit is not a rigid deadline and the further fact that, under proper circumstances, "forthwith" may entail a much shorter period as occurred in *Benjamin v Malcolm* (629 F Supp 713, *affd* 803 F2d 46) where the Department was enjoined to accept "state readies" within 48

hours. In our view, Supreme Court's determination provides the flexibility inherent in the Legislature's choice of the term "forthwith" *(see, Crespo v Hall, supra,* at 859) for it allows a delay of more than 10 days where appropriate exigent circumstances—those occasioned by other than overcrowding conditions in the Department's facilities *(see, Matter of County of Monroe v Cuomo,* 132 AD2d 1003, *lv denied* 70 NY2d 608)—are shown to exist. In short, the determination explicitly and rightly recognizes that, where the Department's claimed exigency is based on the lack of facilities which the State is obligated to furnish, the Department has no more authority to cut off the flow of prisoners into its facilities *(see,* CPL 430.20) than Sheriffs have to control what prisoners they must take or how many they can accommodate *(see, Howell v McGinity,* 129 AD2d 60, 66-67, *lv denied* 70 NY2d 607). Unless and until the Legislature directs otherwise, the Department is not at liberty to shirk its obligation under CPL 430.20 (1) to provide facili-ties for these inmates by administratively saddling the various counties of this State with the Department's responsibility.

The interpretation of "forthwith" adopted by the majority is especially discomfiting when considered in conjunction with the authority reposed in the Commission to compel counties faced with overcrowded jails to build or otherwise provide additional cell space. While the courts cannot prohibit the Commission from performing its statutory mandate, they can, of course, prevent it from applying regulations in an arbitrary fashion *(see, Matter of Pell v Board of Educ.,* 34 NY2d 222, 231). The Commission is empowered by Correction Law § 45 (6) to regulate the Department as well as the County Sheriffs in matters pertaining to the well-being of inmates *(compare,* 9 NYCRR 7000.1 *et seq., with* 9 NYCRR 7600.1 *et seq.).* It would be inequitable and capricious, to say the least, to permit the Commission to require counties to expand and construct jails and to retain additional personnel for the purpose of housing inmates who are properly the Department's charges.

As we read Supreme Court's decision, it does not prohibit the Commission from enforcing its regulations; it merely prevents the Commission from acting against County Sheriffs to the extent that the reason for doing so lies, not with any failure on the part of the Sheriffs, but on the Department to perform its statutory duty. Insofar as it is the Department's conduct, in refusing to accept State-ready prisoners, which gives rise to a Commission decision to cause a county to provide additional jail space, the Commission's action cannot

be condoned, for it in essence shifts the responsibility to house these prisoners from the Department to the counties in contravention of CPL 430.20. Like any administrative agency, the Commission is powerless to promulgate regulations or enforce them in a way that conflicts with or alters, as here, an unambiguously imposed legislative obligation *(see, McNulty v Chinlund,* 62 AD2d 682, 688; *see also, Servomation Corp. v State Tax Commn.,* 51 NY2d 608, 612). For these reasons, we find Supreme Court's restriction of the Commission's exercise of its authority to enforce 9 NYCRR part 7000 entirely appropriate.

WEISS and MERCURE, JJ., concur with MAHONEY, P. J.; YESAWICH, JR., and HARVEY, JJ., concur in part and dissent in part in an opinion by YESAWICH, JR., J.

Judgment modified, on the law, without costs, by reversing so much thereof as (1) directed respondent Commissioner of Correctional Services to accept custody of State-ready prisoners and adjudicated parole violators within 10 days of becoming State-ready, absent exigent circumstances, and (2) enjoined enforcement of 9 NYCRR part 7000 in any manner; petition dismissed in its entirety; and, as so modified, affirmed.